UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINE W. HARRIS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, et al.,<br><br>　　　　Defendants. | No. 2:19-cv-2020 DB P<br><br><br>ORDER |

Plaintiff, a county jail inmate[1] proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983 and has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis. (ECF Nos. 1, 3). This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons stated below, plaintiff's motion to proceed in forma pauperis shall be granted. Plaintiff will also be given an opportunity to amend the complaint.

////

////

////

---

[1] Plaintiff is currently housed at Washoe County Detention Facility in Reno, Nevada. (See generally ECF No. 1 at 1). However, it appears that the claims raised in his complaint arise from events that occurred while he was an inmate at SCJ. (See ECF No. 1 at 2-3, 5-10).

1

## I. IN FORMA PAUPERIS APPLICATION

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). (See ECF Nos. 2, 5). Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in

support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

### III. PLEADING STANDARD

#### A. Generally

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

////

////

### B. Linkage Requirement

Under Section 1983, a plaintiff bringing an individual capacity claim must demonstrate that each defendant personally participated in the deprivation of his rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Ortez v. Washington County, State of Oregon, 88 F.3d 804, 809 (9th Cir. 1996); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Iqbal, 556 U.S. at 676 (stating vicarious liability is inapplicable in Section 1983 suits). Since a government official cannot be held liable under a theory of vicarious liability in Section 1983 actions, plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions by linking each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights. Id. at 676.

## IV. PLAINTIFF'S COMPLAINT

### A. General Facts Alleged

Plaintiff's complaint names California Forensic Medical Group ("CFMG"), the Solano County Sheriff's Office ("SCSO"), the Solano County Jail ("SCJ"), Solano County,[2] and Dr. William Douglas,[3] who provided medical treatment to plaintiff during his detention at SCJ as defendants. (See ECF No. 1 at 1-2, 10). He alleges that defendants were negligent and committed malpractice in violation of his rights, when between August and December of 2012, they repeatedly misdiagnosed and improperly treated what would ultimately be properly diagnosed in October 2018 as advanced-stage relapsing remitting multiple sclerosis. Plaintiff

---

[2] Solano County is not listed as a litigant in the case caption of the docket. Therefore, the Clerk of Court will be directed to add it as a defendant.

[3] The court presumes that the "physician at Solano County Jail" of whom plaintiff speaks throughout the complaint is defendant Douglas, M.D. and thus, refers to him accordingly herein. (Compare ECF No. 1 at 2 (naming defendant Douglas of Solano County Jail as the only physician defendant), with ECF No. 1 at 7 ("physician at the Solano County Jail" reference)). If this is not the case, plaintiff must inform the court of this fact in any amended complaint he may file.

4

states that relapsing remitting multiple sclerosis is a life-threatening illness that has no cure.  (See id. at 3, 5-8).

### B. Harm Caused

Plaintiff asserts that as a result of the misdiagnosis in 2012, for years he experienced repeated bouts of his upper body "dropp[ing] dead" for several minutes, debilitating headaches, pain, numbness and tingling in his hands and arms which has never gone away, as well as what defendant Douglas believed were seizures.  (See ECF No. 1 at 3, 6-8).  He states that treatments he received based upon the misdiagnosis of his illness in 2012 only offered him temporary relief, if any.  (See generally id. at 3, 6-7) (plaintiff alleging recurrent pain and symptoms despite various treatments).  He argues that his illness should have been caught in 2012 while he was in the care of defendant Douglas.  (See id. at 7).  He further asserts that "physician failure and neglect" contributed to his illness worsening and to its spread to his brain and down his spine.  (See id. at 7-8).  Because of the negligence, plaintiff argues, it is unknown how much of his life has been taken from him.  (See id. at 8).

### C. Remedies Sought

Plaintiff seeks compensatory damages against each defendant in the amount of $7.5 million dollars.  He also seeks punitive damages against each defendant in the amount of $7.5 million dollars.  (See ECF No. 1 at 5).

////
////
////
////
////
////
////

## V. DISCUSSION

### A. Defendant William Douglas, M.D.[4]

#### 1. Facts Alleged

In the complaint, plaintiff repeatedly alleges that the harm and pain he has experienced to date has been due to defendant Douglas negligently misdiagnosing him with muscle spasms in 2012.[5] (See ECF No. 1 at 5, 7-8) (plaintiff using terms "neglect of the physician," "physician failure and neglect," and "physician was clearly negligent" to describe defendant Douglas' treatment of him). Plaintiff further asserts that because defendant Douglas did not physically examine him and he denied plaintiff an MRI when he requested one, his symptoms persisted and worsened. (See id. at 6). Plaintiff writes, "The physician abused his power and a[u]thority by refusing to provide me with the necessary medical treatment he knew I needed and had to rely on him for." (See id. at 5) (brackets added). This, plaintiff argues, constituted malpractice on defendant Douglas' part and makes him liable.[6] (See generally id. at 6).

////

---

[4] In one section of the complaint, plaintiff states that defendant Douglas is an employee of the SCJ. (See ECF No. 1 at 2). In another part of the complaint, he states that he is an employee of CFMG. CFMG appears to be a private company which contracted out employees to work at the SCJ. (See generally id. at 10). Plaintiff will need to clarify which statement is correct in any amended complaint he may file. For purposes of this screening, however, the court will assume that defendant Douglas is a proper, actionable defendant even if he is directly employed by a private company. See Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1929 n.1 (2019) (noting private entity may be deemed state actor if government outsources constitutional obligation to it) (citation omitted).

[5] Plaintiff notes that his claims may be untimely, given the fact that the initial harm he alleges occurred in 2012. (See ECF No. 1 at 8). Despite this possibility, he asks that the court consider them given that he did not become aware of defendants' violations until 2018 when he was finally properly diagnosed with multiple sclerosis. (See id. at 8).

Questions related to statutes of limitations are typically matters raised as affirmative defenses in responses to pleadings. See Fed. R. Civ. P. 8(c)(1). Therefore, the court declines to address the issue herein.

[6] Plaintiff also contends that he was misdiagnosed again in 2014. (See ECF No. 1 at 8). Although the record is unclear, it appears that at that time, he was misdiagnosed by a neurologist at California City State Prison as having cervical transverse myelitis. (See id. at 6). He states that he would later learn that his multiple sclerosis was in advanced stages at the time of that misdiagnosis. (See id. at 7). Plaintiff states that eventually, in 2018, he was properly diagnosed while housed at Washoe County Jail by Dr. Kimberly Pope, a neurologist at St. Mary's Medical Center. (See id. at 7).

**2. Relevant Law**

"[E]mployees of a private entity hired by a county to provide medical care to jail inmates thereby act under color of state law, subject to liability under Section 1983. Castillo v. Solano County Jail, No. 2:08-cv-3080 GEB KJN P, 2011 WL 3584318, at *5 (E.D. Cal. Aug 12, 2011) (brackets added) (citing Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704-706 (11th Cir. 1985)).

To state an actionable claim against defendant Douglas that is related to his medical treatment of plaintiff, plaintiff must show that defendant Douglas was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted). Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted). This second prong... "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

**3. Analysis**

Without more, this argument raised against defendant Douglas fails to state a claim upon which relief may be granted. First, plaintiff does not claim that defendant Douglas' alleged failure to properly treat him was deliberate. Specifically, plaintiff does not state that defendant Douglas knew he was in pain and that he was suffering from intermittent physical paralysis, yet he refused to treat him. (See generally ECF No. 1). On the contrary, plaintiff clearly states that in August 2012, upon learning of plaintiff's ailments as plaintiff described them to him, defendant Douglas diagnosed plaintiff with muscle spasms and prescribed him two-weeks-worth of muscle relaxants and medication to reduce swelling. (See id. at 3). Thereafter, when plaintiff told

7

defendant Douglas that the medication was not working, defendant Douglas prescribed plaintiff different muscle relaxants. (See id. at 3, 6). According to plaintiff, "[t]his process went on every (2) weeks till [sic] the end of December 2012 . . . when [he] was transfered [sic] to D.V.I. Reception Center."). (See id. at 6) (brackets added).

Given these facts, it cannot be said that defendant Douglas' treatment of plaintiff rose to a level that is actionable under Section 1983. In other words, it cannot be said that it constituted deliberate indifference to plaintiff's serious medical needs in violation of plaintiff's Eighth Amendment rights. Defendant Douglas treated plaintiff consistently for four months and made timely adjustments to plaintiff's treatment protocol when plaintiff reported to him that particular treatments were not working. (See id. at 3, 5-6). The fact that the treatment was based upon an improper diagnosis or that it was ineffective is not actionable under federal law.

In addition, it is well-settled that negligence or medical malpractice will not support a deliberate indifference claim. See Broughton v. Cutter Labs, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 97, 105-106 (1976)). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition," which is what plaintiff clearly alleges throughout his complaint (see ECF No. 1 at 5, 7-8), "does not state a valid claim of medical mistreatment under the Eighth Amendment." See Estelle, 429 U.S. at 106. Indeed, even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Lemire, 726 F.3d at 1081-82 (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106.

Finally, even if defendant Douglas' treatment of plaintiff was not what plaintiff thought it should have been[7] or what other physicians did who treated plaintiff thereafter, these facts still fail to state a claim. "A difference of opinion between a physician and [a] prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to

---

[7] For example, plaintiff states that defendant Douglas, "never not one time physically examined [him]," and that when he asked defendant Douglas for an MRI, defendant Douglas refused to give him one. (See ECF No. 1 at 6). He also alleges that defendant Douglas "felt [he] was making all this up and [that he was] suffering from a panic disorder." (See id. at 8) (brackets added).

deliberate indifference." Colwell v. Bannister, 763 F.3d 1060, 1068 (9th Cir. 2014) (citations omitted) (brackets added).

In light of the above, plaintiff has failed to state a claim against defendant Douglas. However, on the off chance that there are additional facts related to this claim which enable plaintiff to establish that other treatment protocols defendant Douglas implemented constituted deliberate indifference, plaintiff will be permitted to amend this claim.

**B.  Remaining Defendants**

   **1.  Solano County Sheriff's Office and Solano County**

      **a.  Facts Alleged**

With respect to the Solano County Sheriff's Office, plaintiff argues that it is "responsible for promulgating policies and procedures for the operation of its jail facilities" and that it "retains the ultimate authority and responsibility for the health care, treatment, well-being and safekeeping of prisoners in jail." (ECF No. 1 at 10). Plaintiff appears to imply that for these reasons, SCSO is liable for his misdiagnosis and resulting pain and suffering. (See generally id. at 10).

As for Solano County, plaintiff contends that it "is responsible for the actions, inactions, policies, procedures, and practices of the Solano County Sheriff's Office and its respective employees and[/]or agents." (See ECF No. 1 at 9) (brackets added). He contends that because the County approved the contract between the Solano County Sheriff's Office and health care provider California Forensic Medical Group, "by law, the County retains ultimate authority and responsibility for the health care, treatment, well-being, and safekeeping of prisoners in the jail." (Id. at 10). For these reasons, plaintiff generally argues, SCJ is also liable for his misdiagnosis by defendant Douglas and the resulting harm. (See id. at 10).

      **b.  Relevant Law**

To prevail on his claims against the SCSO and Solano County, plaintiff must assert that: (1) he was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to his constitutional right, and (4) the policy or custom was the moving force behind the constitutional violation. Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1110-11 (9th Cir. 2001).

9

"[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997) (brackets added) (citing Monell v. Dep't of Social Services, 436 U.S. 658, 690-91 (1978)). "[A] local governmental body may [also] be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (brackets added) (citing City of Canton, 489 U.S. 378, 388 (1989)). "[A] policy is 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" Oviatt, 954 F.2d at 1477 (brackets added) (omission in original) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986)).

### c. Analysis

Plaintiff's claims against these two entities generally allege that the SCSO and Solano County have their own policies and procedures and that each of them is responsible for prisoners' health care treatment and well-being. (See ECF No. 1 at 10). However, plaintiff fails to identify specific policies or customs of each which, when implemented, amounted to deliberate indifference to his serious medical needs. (See id. at 9-10).

For these reasons, plaintiff's claims against Solano County and the Solano County Sheriff's Office fail to state claims upon which relief may be granted. 28 U.S.C. § 1915A(b)(1). Plaintiff will, however, be given an opportunity to remedy the problems with these claims in any amended complaint he may file.

### 2. California Forensic Medical Group

### a. Facts Alleged

Plaintiff argues that CFMG is responsible "for the acts [and] treatment that [its] staff members provide" and is "responsible for the negligent acts of their [sic] staff." (ECF No. 1 at 10) (brackets added). Specifically, he asserts that because defendant Douglas was CFMG's employee, it is liable for his negligent acts. (See id. at 10). According to plaintiff, CFMG refused to step in to help him, despite being aware of defendant Douglas' actions. (See id. at 5). He

claims that CFMG was aware of defendant Douglas' actions because he filed grievances about the treatment, and CFMG denied them through the third level of appeal.[8]  (See generally id. at 5).

### b. Relevant Law and Analysis

This claim as presented is not actionable.  This is because even if in an amended complaint plaintiff were to raise an actionable deliberate indifference claim against defendant Douglas as a CFMG employee, CFMG cannot be held liable for defendant Douglas' actions on a theory of respondeat superior.  See generally Monell, 436 U.S. at 691; Howell v. Evans, 922 F.2d 712, 724 (11th Cir. 1991) (stating private corporation providing medical services under contract with state cannot be held liable on theory of respondeat superior); see also Hickey By and Through Timalu v. County of Stanislaus, No. 94-15151, 1996 WL 73371, at *3 (9th Cir. Feb. 20, 1996) (stating CFMG cannot be held liable on theory of respondeat superior).

To the extent plaintiff also alleges that CFMG is directly liable because it was actively aware of the difficulty plaintiff was having receiving an accurate diagnosis and proper treatment, yet it did nothing to facilitate plaintiff receiving these things (see ECF No. 1 at 10),[9] this claim, as currently presented, is also not actionable.  This is because as a private entity that has contracted with the state to provide health care, CFMG is the functional equivalent of a municipality.  See Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997); see also Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012) (citing Buckner and finding no need to distinguish between municipalities and private entities acting under color of state law).  Accordingly, because plaintiff does not argue that CFMG had an official policy or custom that led to a violation of his rights (see generally ECF No. 1), plaintiff has not made a threshold showing that CFMG violated his rights under Section 1983.  See Buckner, 116 F.3d at 453 ("[T]he requirement of a municipal policy or custom constitutes an essential element of a [Section] 1983 claim that a plaintiff must prove in order to establish municipal liability.").

---

[8] As an aside, it is unclear what plaintiff means when he claims that CFMG, a private organization, denied what are presumed to be his administrative appeals.  To the extent that it is relevant to any claims he may file in an amended complaint, plaintiff must clarify this statement.

[9] Plaintiff asserts that CFMG was aware of defendant Douglas' actions because plaintiff filed grievances about the treatment, and CFMG denied them through the third level of appeal. (See generally ECF No. 1 at 5).

For these reasons, the claims plaintiff has raised against CFMG are not cognizable. Here again, however, plaintiff will be given an opportunity to amend them in a first amended complaint.

## VI. OPTIONAL LEAVE TO AMEND

Plaintiff is being given the opportunity to amend the complaint. If plaintiff chooses to file an amended complaint, it will take the place of the original complaint. See Lacey v. Maricopa Cty., 693 F.3d 896, 925 (9th Cir. 2012) (amended complaint supersedes original). Any amended complaint should observe the following:

An amended complaint must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

An amended complaint must also contain a caption including the names of all defendants. Fed. R. Civ. P. 10(a). Plaintiff may not change the nature of this suit by alleging new, unrelated claims. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Any amended complaint must be written or typed so that it is complete in itself without reference to any earlier filed complaint. See L.R. 220 (E.D. Cal. 2009). This is because an amended complaint supersedes any earlier filed complaint, and once an amended complaint is filed, the earlier filed complaint no longer serves any function in the case. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter being treated thereafter as non-existent."), overruled on other grounds by Lacey v. Maricopa Cty., 693 F.3d 896 (2012).          Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of Court shall add Solano County to the case caption of the docket as a defendant;

2. Plaintiff's motion to proceed in forma pauperis (ECF No. 3) is GRANTED;

3. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. §

1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith;

    4. Plaintiff's complaint (ECF No. 1) is DISMISSED with leave to amend, and

    5. Within sixty days of the date of this order, plaintiff shall file an amended complaint. Failure to comply with this order within the time allotted may result in the dismissal of this action for failure to state a claim upon which relief may be granted. See 28 U.S.C. § 1915A(b)(1).

Dated: October 14, 2020

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:13
DB/ORDERS/ORDERS.PRISONER.CIVIL RIGHTS/harr2020.scrn